IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| WILLIAM E. BUMGARNER | § | |
| VS. | § | CIVIL ACTION NO. 9:04cv249 |
| SHERIFF OF ANGELINA COUNTY, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff William E. Bumgarner, a prisoner previously confined at the Angelina County Jail, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The case was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The complaint was filed on November 16, 2004. The Plaintiff alleged that he was improperly handcuffed to a sewer. His hands were cut and a bone in his left hand was broken while he was handcuffed. The Defendants subsequently failed to provide him medical care, and he did not receive medical care until Cherokee County officials picked him up on the following morning. He argued that he had been subjected to cruel and unusual punishment.

On April 20, 2005, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Defendants were present and represented by counsel. The Plaintiff was confined in the Angelina County Jail from May 28, 2003, to October 16, 2003. He was on parole at the time he was confined in the jail and was arrested on new misdemeanor charges. He pled guilty and was sentenced to time served on the new charges. Cherokee County officials picked him up due to other charges pending there.

The Plaintiff testified that he has been diagnosed as Schizophrenic and Bi-polar. He also has Hepatitis C. He was taken on several occasions to the Burke Center, a psychiatric facility, while confined in the Angelina County Jail. He was not taking his psychiatric medications at the time of the incident which is the subject of the present lawsuit. On October 15, 2003, at approximately 5 to 6 p.m., he had an argument with another inmate. Jail officials then placed the Plaintiff in a holding cell. The Plaintiff again testified that he was not taking his medication, and he experienced a psychotic episode. He was agitated and started pushing the emergency call button. A jailer told him they would get back in touch with him. The Plaintiff, however, repeatedly pushed the emergency call button. The Plaintiff testified that he was told that he was disrupting efforts to feed the inmates, thus he was handcuffed to the sewer drain on the floor. The Plaintiff alleged that Sgt. Johnson issued the order to have him handcuffed to the sewer drain. Sgt. Simpson was the officer who actually handcuffed him to the drain. The Plaintiff noted that there was no commode in the cell and that inmates confined in the cell must urinate or regurgitate in the drain. He said it was filthy. He was concerned about diseases he could be exposed to by being handcuffed to the drain. He attempted to get free, which resulted in injuries to his hand. His hands were cut, and he broke a bone in his left hand. Jailers looked in on him every fifteen or so minutes. He eventually calmed down. He was handcuffed to the sewer drain between 45 minutes and one and one-half hours. Sgt. Johnson removed him from the holding cell and placed him in a new cell. She examined the Plaintiff's hands and offered to clean them with alcohol. He denied the offer. He also denied the offer for Tylenol. He noted that he cannot take Tylenol because he has Hepatitis C. He complained that medical personnel did not see him. He thought he should have been taken to the hospital, particularly because of his mental condition.

Cherokee County officials picked him up on the following day at approximately 9 to 10 a.m. The officer transporting him to Cherokee County observed his hands and obtained permission to take him to the hospital. The examination revealed the broken bone. He was sent to a specialist and received a cast on his hand.

The Plaintiff testified that he filled out a grievance form about 10 p.m. on October 15, 2003. He filled it out and turned it in. He does not know what happened to the grievance after he turned it in. He noted that it could have been thrown away by Angelina County jailers.

The Plaintiff testified that he named Sheriff Kent Henson as a defendant since he is in charge of the jail. He sued Sgt. Johnson because she had him moved and handcuffed. He sued Sgt. Simpson because he was the person who actually handcuffed him to the sewer drain.

Sgt. Brenda Johnson was called as a witness by the Defendants. Pictures of the holding cell were entered into evidence. The pictures show a small drain on the floor where inmates may urinate. She testified that a two foot chain connected the drain to an inmate's handcuffs. Sgt. Johnson testified that the Plaintiff was handcuffed to the drain because he would not stop pushing the emergency call button. She noted that the emergency button overrode all other operations using the speakers. The jailers could not feed the inmates because he would not stop pushing the button. She observed scratches on the Plaintiff's hands. She called the nurse about the matter. She was told to clean the Plaintiff's hands with alcohol and provide him with Tylenol. The Plaintiff denied the offer to have his hands cleaned with alcohol. He accepted the Tylenol. When questioned by the Plaintiff, Sgt. Johnson emphasized that she followed instructions given to her by the nurse.

The Plaintiff testified once more after Sgt. Johnson completed her testimony. The Plaintiff testified that there was no chain connecting his handcuffs to the drain. He was handcuffed directly

to the drain. He had to sit on the floor. His hands were touching the grate to the sewer drain at all times. He noted that the floor was dirty. It was not clean as depicted in the picture. He argued that handcuffing him to the sewer was cruel and unusual punishment. He also argued that he was subjected to cruel and unusual punishment by being denied medical care.

The lawsuit should be dismissed for several reasons. First if all, the Plaintiff did not exhaust his administrative remedies. The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. Under previous versions of § 1997e, district courts had the discretion to require an inmate to exhaust his prison administrative remedies while his case was pending in federal court. *Martin v. Catalanotto*, 895 F.2d 1040, 1041-42 (5th Cir. 1990); *Rocky v. Vittorie*, 813 F.2d 734, 736 (5th Cir. 1987). In 1996, Congress enacted the Prison Litigation Reform Act (hereinafter "P.L.R.A."), which made several changes to 42 U.S.C. § 1997e. Congress tightened up the exhaustion requirements. Without exception, inmates are now required to exhaust all administrative remedies available in the prison system prior to filing a lawsuit. *Booth v. Churner*, 532 U.S. 731 (2001). They must exhaust such remedies regardless of whether the remedies are "plain, speedy and effective." *Id.* at 739. The Fifth Circuit has likewise held that inmates must exhaust all administrative remedies before proceeding to federal court. *Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001). Finally, the Fifth Circuit has upheld the dismissal of civil rights lawsuits by a county jail inmate where the inmate failed to pursue all steps of the jail's grievance procedures. *Teixeira v. Gregg County Jail*, 74 Fed. Appx. 388 (5th Cir. 2003).

The documents submitted during the *Spears* Hearing reveal that the Angelina County Jail has a two step grievance plan. *See* Exhibit 1, Page 22. The initial grievance goes to the Grievance Board. If an inmate is unhappy with the decision of the Grievance Board, his remedy is to appeal

to the Sheriff, whose decision is final. The Plaintiff testified that he filed only the initial grievance. He was unaware if it was ever processed since he was transferred to the Cherokee County Jail on the following morning. The Court concludes that the lawsuit should be dismissed since the Plaintiff failed to exhaust all of his administrative remedies.

The lawsuit should be dismissed for the additional reason that it is frivolous and fails to state a claim upon which relief may be granted. The provisions of § 1997e(c)(2) permit a court to dismiss claims on the merits despite the lack of exhaustion if such claims are frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.

The Plaintiff alleged that he was subjected to cruel and unusual punishment. The standard of determining whether the conditions are cruel and unusual "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1984). Conditions "alone or in combination" may amount to a constitutional violation. *Id.* at 347. In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court emphasized the Constitution does not mandate comfortable prisons and only deprivations denying "the minimal civilized measure of life's necessities" form the basis of an Eighth Amendment violation. Conditions that are "restrictive or even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. at 347. At the same time, in order to state a cognizable claim, a prisoner must allege facts showing that jail officials acted with a culpable state of mind -- that they acted with deliberate indifference. *Wilson*, 501 U.S. at 302-303; *Alberti v. Sheriff of Harris County, Texas*, 937 F.2d 984, 1004 (5th Cir. 1991).

In the present case, the Plaintiff was temporarily handcuffed to the sewer drain while he was having a psychotic episode. He was handcuffed there for no more than one and one-half hours. The Plaintiff does not have a basis for a potentially meritorious lawsuit simply because he was temporarily handcuffed. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *Jackson v. Cain*, 864 F.2d 1235, 1243-44 (5th Cir. 1989). Furthermore, the actions attributed to the Defendants were rather innocuous. He was handcuffed for a short period of time while he was having a psychotic episode. Jailers checked on him every fifteen minutes or so. He was released after he calmed down. The Fifth Circuit has held that an "isolated incident of non-remarkable proportions" does not rise to the level of a constitutional violation. *See James v. Alfred*, 835 F.2d 605, 607 (5th Cir. 1990); *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988). Finally, there is no indication that the Defendants intended to wantonly subject him to unnecessary pain. The Plaintiff admitted that he had a good relationship with Sgt. Johnson but was shocked by the way he was treated on that day. At the time of the incident, however, it was necessary for Sgt. Johnson to take steps to control an inmate who was having a psychotic episode. Other options may have been available, but the steps that were taken were rather minimal and successful in holding him in place until he calmed down. The facts as alleged and developed do not support an inference of deliberate indifference. They do not satisfy the second prong of a cruel and unusual punishment claim requiring a culpable state of mind.

The Plaintiff also complained that he was not given medical care. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court

concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001). The Plaintiff must satisfy this high standard, as opposed to simply showing better decisions could have been made.

In the present case, the Plaintiff testified that Sgt. Johnson looked at his hands when the handcuffs were removed. She testified that she called the nurse. Pursuant to the nurse's instructions, Sgt. Johnson offered to clean the scratches with alcohol. She also provided Tylenol. She was not deliberately indifferent to his medical needs.

The Plaintiff complained that the medical care was inadequate; however, allegations regarding the adequacy of medical treatment cannot amount to a violation of federal rights. *See Estelle v. Gamble*, 429 U.S. at 107; *Jackson v. Cain*, 864 F.2d at 1244; *Johnson v. Treen*, 759 F.2d

7

1236, 1238 (5th Cir. 1985). He also argued that he should have been taken to the hospital; however, he was taken to the hospital by Cherokee County officials on the following morning. Under these circumstances, he can complain about the delay in being taken to the hospital only when the delay was the product of deliberate indifference and such delay resulted in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Once again, there is no indication that the Defendants were deliberately indifferent. Furthermore, there is no indication that the Plaintiff was substantially harmed as a result of the delay. The facts as alleged and developed do not support a potentially meritorious civil rights lawsuit based on deliberate indifference to a serious medical need.

      The facts as alleged and developed reveal that the claims against Sheriff Henson and Sgt. Simpson should be dismissed for yet another reason. In order to successfully plead a cause of action in a civil rights case, a plaintiff must enunciate a set of facts that illustrate the defendants participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Neither of these individuals participated in the alleged acts of misconduct. The Plaintiff identified the wrong officer as the one who placed handcuffs on him, and Sheriff Henson was not involved in the matter at all. The only other way they could possibly be implicated in these claims is through their supervisory capacity. Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither condition is satisfied.

      In conclusion, the Plaintiff's claims should be dismissed because he failed to exhaust his administrative remedies and dismissed with prejudice because his claims fail to state a claim upon

which relief may be granted and are frivolous in that they lack any basis in law and fact. The claims should be dismissed with prejudice pursuant to 42 U.S.C. § 1997e(c)(2). It is accordingly

**ORDERED** that the complaint is **DISMISSED** with prejudice. It is further

**ORDERED** that all motions by either party not previously ruled on are hereby **DENIED**.

So **ORDERED** and **SIGNED** this **29** day of **April, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE